USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 6, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ROBERT FEREBEE,

        *Plaintiff,*

  -against-

THE CITY OF NEW YORK, ET AL.,

        *Defendants.*

------------------------------------------------------------X

No. 15-CV-1868 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

On September 8, 2014, Plaintiff ROBERT FEREBEE ("Plaintiff or "Ferebee") was arrested in front of the 45th Precinct stationhouse in the Bronx, NY for violating an order of protection ("OOP"). During the search incident to arrest, the arresting officers found loose Tramadol pills in his pocket. Ferebee had twice violated the OOP directing him to stay away from his mother and her home, and Officer Cruz and Sergeant Rosario (together, the "Officers") state that these violations and the resultant open complaints were the basis for making the arrest. Plaintiff was detained for less than 24 hours, during which time he was twice taken to the hospital for hernia-related pain. The Bronx District Attorney ("DA") declined to prosecute Plaintiff for the OOP violations; but charged him with criminal possession of a controlled substance ("CPCS") under New York Penal Law 220.03. On November 14, 2014, the CPCS charges were dismissed.

Plaintiff filed this 42 U.S.C § 1983 action on March 12, 2015 against the City of New York, Officer Cruz, and Sergeant Rosario ("Defendants"), alleging False Arrest (**Count I**), Malicious Prosecution (**Count II**), Denial of Fair Trial (**Count III**), Failure to Intervene (**Count IV**), Illegal Search (**Count V**), Excessive Force (**Count VI**), Excessive Pre-Arraignment

1

Detention (**Count VII**), and <u>**Monell**</u> **Claims**.[1] *See* ECF 21.

Defendants move for summary judgment on all of Plaintiff's claims, pursuant to Fed. R. Civ. P. 56(a). *See* ECF 36.

There is no genuine dispute of material fact with regard to any of Plaintiff's claims. **Counts I** and **V** fail because the Officers had probable cause to arrest Ferebee for violating the OOP: Sergeant Rosario signed off on the Domestic Incident Reports relating to these violations, and thus had knowledge that Plaintiff had committed a crime, giving her valid cause to arrest and conduct a search incident to arrest. Similarly, **Count II** fails because there was probable cause to charge Plaintiff with CPCS, as he literally violated Public Health Law § 3345 by carrying a controlled substance outside its original container in excess of "current use." Even without probable cause, **Count II** would still fail for lack of any evidence demonstrating malice. The Officers did not initiate the proceeding; the Bronx DA did. Plaintiff's denial of fair trial claim (**Count III**) is based on the theory that Officer Cruz withheld information regarding Plaintiff's Tramadol prescription. The claim fails because possession of a valid prescription is irrelevant under Public Health Law § 3345; and regardless, Plaintiff could have produced the prescription at trial, negating the effect of the alleged withholding. **Count VI** fails because hospital records, made on two separate occasions while Ferebee's arrest was processed, indicate that Plaintiff suffered no injury from his arrest, and Plaintiff admits as much. **Count VII** fails because Plaintiff was detained for less than 24 hours, and any delay in his arraignment was caused by the Officers taking Plaintiff to the hospital in response to his complaints of pain. **Count IV** and the <u>**Monell**</u> **Claims** fail because no constitutional violation occurred.

Defendants' motion for summary judgment is GRANTED.

---

[1] Plaintiff's complaint does not assert a separate municipal liability claim, but asserts municipal liability claims in each of the individual claims. Def. Ex. A. ¶¶ 21–26, 32–38, 48–53, 57, 69–73, 79–86.

2

## BACKGROUND

I.  **Relevant Facts**

   a. **Ms. Ferebee's Complaints**

On July 21, 2014, the Bronx County Criminal Court entered an order of protection directing Robert Ferebee to "Stay away from [his mother]" and from her home. Def. 56.1 ¶ 2. The order provided, *inter alia*, that "YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION." Id. ¶ 3. The OOP was effective from July 21, 2014, until and including September 10, 2014. Id. ¶ 4. Plaintiff was aware of the order. Id. ¶ 5.

On August 18, 2014, Plaintiff's mother, Ms. Ferebee, called the police and complained that Plaintiff was at her apartment; and asked for help in getting him to leave. Id. ¶ 6. The police responded, but Plaintiff had already left. Def. Exs. E–F. On September 1, 2014, Plaintiff's mother called the police again to complain that Plaintiff had entered her home, taken $100 from her pocketbook, and run out. Id. ¶ 8. Officers again went to Ms. Ferebee's home, but Ferebee had already left. Def. Exs. H–I. The responding officers filed Complaint Reports and Domestic Incident Reports for both violations. Id.; Def. Exs. E–I. Sergeant Rosario ("Sgt. Rosario") signed off on both Domestic Incident Reports. Def. Ex. F at 2; Def. Ex. I at 3. Both visitations constituted OOP violations. Def. Ex. C. This was not a novel experience: Ms. Ferebee had made numerous police complaints about her son before, and Sgt. Rosario had been to her apartment more than 10 times to respond. Pl. Ex. D at 24–25. Officer Cruz ("P.O. Cruz") also visited Ms. Ferebee's apartment multiple times after (and in response to) the September 1st complaint. Pl. Ex. C. at 25–27.

3

### b. The Arrest

On September 8, 2014, Plaintiff and his mother visited the 45th Precinct stationhouse to file a harassment complaint against P.O. Cruz because he "kept popping up in the house." Def. 56.1 ¶ 10; Pl. Ex. A. at 22–23. Plaintiff stepped out to smoke a cigarette. Def. 56.1 ¶ 15. As Plaintiff walked in front of the precinct, Sgt. Rosario and P.O. Cruz spotted Plaintiff and arrested him based on the open complaints for his violation of the OOP ("the Open Complaints"). Id. ¶¶ 16, 18–19; Pl. Ex. C. at 38; Pl. Ex. D. at 45–46. Sgt. Rosario directed P.O. Cruz to "cuff him," and P.O. Cruz did so. Def. 56.1 ¶¶ 17, 20.

Plaintiff claims that after P.O. Cruz handcuffed his arms behind his back, he lifted Plaintiff's arms "way up above his head" for a search, Pl. Ex. A. at 90, "like he was trying to make a point." Pl. Ex. A. at 90, 93; Def. 56.1 ¶ 24. Plaintiff was not hit, punched, or kicked, nor did he sustain any physical injuries during the arrest. Def. 56.1 ¶¶ 26–27. During the search incident to the arrest, P.O. Cruz found Tramadol pills loose in Plaintiff's pants pocket. Id. ¶ 31. P.O. Cruz confiscated the pills, and sent them to the lab for testing. Id. ¶¶ 33–34. Plaintiff's handcuffs were removed and he was placed in a cell. Id. ¶ 36.

Thereafter, Plaintiff claimed he was in pain and was taken to Jacobi Hospital at 1:00 P.M. Id. ¶ 37. On September 8, 2014, Plaintiff was in the hospital from 2:39 P.M. to 5:49 P.M. Id. ¶ 38. He was returned to the stationhouse at 6:30 P.M.; and taken to Bronx Central Booking ("BCB") at 10:16 P.M. Id. ¶¶ 39–40. Plaintiff again complained of pain, and was taken to Jacobi Hospital at 12:15 A.M., where he stayed from 1:14 A.M. to 5:15 A.M. Id. ¶¶ 41–42. Plaintiff was returned to BCB, processed, and arraigned at 12:33 P.M. Id. ¶¶ 44, 48. During both hospital visits, Plaintiff was treated for complaints of pain regarding his hernia. Pl. Ex. A. 58–60; Def. Exs. R. at 1–2. From Plaintiff's arrest at 12:55 P.M. on September 8, 2014 until his release after

arraignment at 12:33 P.M. on September 9, 2014, Plaintiff was detained for just under 24 hours. Id. ¶ 52.

### c. The Tramadol

Prior to September 8, 2014, Plaintiff had a prescription for Tramadol for his hernia pain. Id. ¶¶ 13, 43. Tramadol is an opioid pain medication, with high risk of addiction, and is a Schedule IV controlled substance. Id. ¶ 14; Opioid Data Analysis, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/drugoverdose/data/analysis.html (last updated Feb. 9, 2017). Plaintiff's prescription provides, as written on the pill bottle label: "[t]ake one tablet by mouth every 12 hours as needed for pain." Def. Ex. J; Def. 56.1 ¶ 13. Plaintiff claims that he had one and one-half pills loose in his pocket at the time of his arrest. Def. 56.1 ¶ 12. P.O. Cruz claims he found three full pills and one partial pill loose in Plaintiff's pants pocket. Id. ¶ 33. P.O. Cruz contemporaneously vouchered the pills. Def. Exs. N, O. Lab testing required destructive testing of one pill, leaving 2.5 pills intact. Def. Ex. O; Def. 56.1 ¶¶ 34–35. These remaining pills were photographed, inventoried, and vouchered into evidence storage. Def. Ex. P.

### d. Ferebee's Criminal Charges

After the arrest, P.O. Cruz spoke to the assistant district attorney ("ADA") about Plaintiff's OOP violation. Def. 56.1 ¶ 45. P.O. Cruz gave the ADA the arrest paperwork, the transcript of Plaintiff's mother's 911 calls, and the report detailing the Open Complaints. Id. Sgt. Rosario was not involved with Plaintiff's prosecution. Id. ¶ 47. The DA declined to prosecute Plaintiff for the OOP violations, Id. ¶ 46, but arraigned him on criminal charges of CPCS in the seventh degree, in violation of N.Y.P.L. 220.03. Id. ¶ 48. On September 9, 2014, Plaintiff was released on his own recognizance after arraignment. Id. ¶ 50. On November 14, 2014, the

5

criminal charges were dismissed. Id. ¶ 51. On March 12, 2015 Plaintiff filed the complaint in this action. Id. ¶ 53.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party must first present evidence on each material element of his claim or defense, showing that he is entitled to relief as a matter of law. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The non-movant "may not rely on conclusory allegations or unsubstantiated speculation" to raise a triable issue of fact. FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). The court resolves all ambiguities and draws all factual inferences in favor of the non-movant "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (citation omitted).

Courts considering summary judgment motions in the false arrest or malicious prosecution contexts must resolve any disputes about what information the officer knew at the time in favor of the non-movant, but must neutrally determine whether that information gave rise to probable cause. Benn v. Kissane, 510 Fed. Appx. 34, 37 (2d Cir. 2013). When opposing

parties tell two different stories, one of which is "blatantly contradicted" by the record such that no reasonable jury could believe it, courts should not adopt that version in evaluating summary judgment. Scott, 550 U.S. at 380.

**II.   Analysis**

    **A. False Arrest (Count I)**

"…[P]robable cause is a complete defense to false arrest claims" made under § 1983. Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015); Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016). The crime need not be the same as the crime ultimately charged. Marcavage v. City of New York, 689 F.3d 98, 109–10 (2d Cir. 2012). The probable cause inquiry is fluid and considers the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 231 (1983).

An officer has probable cause to arrest when he is informed of a crime by the victim or an eyewitness, absent circumstances that raise doubts as to the informant's veracity. *See, e.g.,* Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995); McGee v. Doe, 568 Fed. Appx. 32, 37 (2d Cir. 2014). An officer can make an arrest without personal knowledge that a crime has been committed if he is acting on the direction of, or as a result of communication with, another officer who has sufficient information to establish probable cause. U.S. v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). Courts must find probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Here, the Officers had probable cause to arrest Ferebee. They knew of the OOP, and had previously responded to Ms. Ferebee's complaint about Plaintiff's OOP violations. Def. 56.1 ¶¶ 6, 8; Pl. Ex. C. at 25–27; Pl. Ex. D at 24–25. Complaint Reports and Domestic Incident Reports were completed in response to both calls; Sgt. Rosario signed off on both Domestic Incident Reports; and the Open Complaints were available to the 45th Precinct detective and domestic violence squads. Pl. Ex. D. at 45–47; Def. Ex. F. at 2; Def. Ex. I. at 3. The 08/18 report reflects an active OOP and a Stay Away Order for Ferebee; and that he had violated the order. Def. Ex. F. at 1. The report details that Ms. Ferebee had complained of the OOP, and that Plaintiff was at the protected location. Id. at 2. The 09/01 report details Plaintiff's petit larceny (i.e. the theft of his mother's money), but says "No" in the OOP field. Def. Ex. I. at 1–2.

When the Officers arrived at the precinct on September 8, 2014, they saw Plaintiff standing outside, immediately recognized him, and referred to him by name. Def. 56.1 ¶¶ 16–17; Def. Ex. D. at 33: 3–13. Both Officers had probable cause to arrest Plaintiff based on (1) their ability to identify Plaintiff and (2) their knowledge of Plaintiff's OOP violations. Singer, 63 F.3d at 119; McGee, 568 Fed. Appx. at 37. Sgt. Rosario signed off on the 08/18 and 09/01 report; and she directed P.O. Cruz to "cuff him." Def. 56.1 ¶ 17. Her knowledge alone provides valid probable cause to arrest. Colon, 250 F.3d at 135.

While the court must construe disputes about the officer's knowledge in favor of the non-movant, Benn, 510 Fed. Appx. at 37, there is no material dispute here. Scott, 550 U.S. at 380. Plaintiff points to no evidence in support of his assertion that the Officers were unaware of the Open Complaints. Instead, Plaintiff speculates that P.O. Cruz learned of the Open Complaints inside the precinct after the arrest. Memo in Opp. at 6. The only factual evidence Plaintiff points to in support of this speculative proposition is P.O. Cruz's alleged statement immediately

8

preceding the arrest: "Were you getting released or turning yourself in?" Pl. Ex. A. at 38. This is idle chatter, and a reasonable jury could not conclude that P.O. Cruz lacked knowledge. In any event, P.O. Cruz's personal knowledge is irrelevant in light of Sgt. Rosario's knowledge of the OOP violations. Colon, 250 F.3d at 135. Plaintiff's reliance on conclusory allegations, rather than facts, does not create a genuine dispute as to the Officers' knowledge of the violated OOP. FDIC, 607 F.3d at 292.

Defendants' motion for summary judgment on the false arrest claim is GRANTED. The Officers' knowledge of the Open Complaints provided a reasonable belief that Ferebee had committed a crime, which created sufficient probable cause to arrest, Figueroa, 825 F.3d at 99; this entitles Defendants to judgment as a matter of law.

### B. Malicious Prosecution (Count II)

A § 1983 malicious prosecution claim is "substantially the same" as a state law claim, Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003), and requires the plaintiff to prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendants' actions." Stampf v. Long Island R. Co., 761 F.3d 192, 198 (2d Cir. 2014) (citation omitted). The second element is established, since the proceeding was terminated in Plaintiff's favor, but Plaintiff fails to satisfy any of the remaining three elements. Def. 56.1 ¶ 51. The malicious prosecution claim fails.

#### a. Initiation of Proceeding

To initiate a prosecution, an officer must do more than report the crime or give testimony. Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010). "He must play an active role...such as giving advice and encouragement or importuning the authorities to act." Id. A

9

presumption exists that "once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." Douglas v. City of New York, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009).

An officer who does no more than disclose all known material information has not initiated a proceeding. Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000). "Officers that withhold material exculpatory evidence from the prosecutor, or knowingly create false information that creates the basis for the prosecution may be found to have initiated a prosecution." Hicks v. City of New York, No. 15-CV-04888 (PAC), 2017 WL 532304, at *6 (S.D.N.Y. Feb. 8, 2017).

Here, Sgt. Rosario's involvement ceased after the arrest was processed. Def. 56.1 ¶ 47. P.O. Cruz completed the arrest paperwork, spoke with the Bronx Assistant DA ("ADA"), and provided him with the paperwork, transcripts of Ms. Ferebee's 911 calls, and the Open Complaints. Id. ¶ 45. Plaintiff claims P.O. Cruz failed to disclose to the ADA his knowledge of Plaintiff's prescription, and that this constitutes withholding of "material exculpatory evidence." Memo in Opp. at 12–13. Whether Plaintiff had a prescription, however, is irrelevant under Public Health Law § 3345: carrying an amount of a substance outside its original container in excess of "current use" is a crime. N.Y. Public Health Law § 3345 (McKinney's 2017). At the time of his arrest, Plaintiff had more Tramadol pills than the "current use" amount, and thus literally violated Public Health Law § 3345. Id. Accordingly, his prescription is not "exculpatory evidence," and a reasonable trier of fact could not find that P.O. Cruz initiated the proceeding by withholding information about Plaintiff's prescription from the ADA.

### b. Probable Cause

"...[P]robable cause constitutes a complete defense to a claim of malicious prosecution in New York." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). In the malicious prosecution context, officers have probable cause to commence a proceeding where there exist "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty," a slightly higher standard than for false arrest claims. Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013). In evaluating probable cause to commence a proceeding, the court evaluates information that existed at the time the prosecution was initiated. Rounsville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994).

Obviously there was probable cause for the OOP violations. There was also probable cause to commence the proceeding under Penal Law 220.03, which makes it illegal to "knowingly and unlawfully" possess a controlled substance, and requires an underlying Public Health Law offense. N.Y. Penal Law § 220.03 (McKinney 2015); *see also* Bravo v. State, 129 A.D.3d 488, 489 (N.Y. App. Div. 2015). Public Health Law § 3345 precludes possession of a controlled substance outside its original container, except for the purpose of "current use." N.Y. Public Health Law § 3345 (McKinney's 2017). Tramadol is a Schedule IV controlled substance. N.Y. Public Health Law § 3306 (McKinney's 2016). Plaintiff's prescription instructed him to take one pill every 12 hours. Def. Ex. J. He claims that he had 1.5 pills loose in his pocket on September 8, 2014. Def. 56.1 ¶ 12. P.O. Cruz claims to have found 3.5 pills during his search of Plaintiff. Def. Ex. O; Def. 56.1 ¶¶ 33–35.

While the court must resolve all inferences and ambiguities in favor of the non-moving party, where the non-movant's version of events is "blatantly contradicted" by the record, such that no reasonable jury could believe it, its adoption is unwarranted. Scott, 550 U.S. at 380

11

(plaintiff's allegation that he was abiding by traffic laws was contradicted by video footage showing his erratic driving). Here, Plaintiff's claim that he had only 1.5 pills is contradicted by the 3.5 pills contemporaneously vouchered by P.O. Cruz, as well as photographic evidence showing 2.5 pills, after one was destructively tested by the lab. Def. Exs. N, O, P; *see* Def. 56.1 ¶¶ 33–35. Absent any tangible evidence challenging the voucher and the photograph's validity, the Court analyzes the malicious prosecution claim with the understanding that there were 3.5 pills. *See* Matsushita, 475 U.S. at 586; Scott, 550 U.S. at 380.

Since Plaintiff's prescription called for one pill every 12 hours, and he was carrying 3.5 pills, he was in excess of the amount of medication allowed by the statute for "current use," in violation of § 3345.[2] N.Y. Public Health Law § 3345 (McKinney's 2017); *see* Cortes v. City of New York, 148 F. Supp. 3d 248, 254 (E.D.N.Y. 2015) ("The statute contains no convenience exception.") (internal quotations omitted). This literal violation "would lead a reasonably prudent person to believe [P]laintiff guilty" of CPCS; Defendants thus had probable cause to commence the proceeding. Stansbury, 721 F.3d at 95; *see e.g.*, Michaels v. City of New York, No. 10 Civ. 2666, 2011 WL 570125 (S.D.N.Y. Feb. 16, 2011) (finding probable cause to commence proceeding pursuant to § 220.03 where plaintiff had three loose pills in his pocket despite having a valid prescription).

c. **Malice**

Malice requires that the defendant have commenced the criminal proceeding due to an improper motive, i.e. something other than the desire to see justice served. Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996). "There must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." Brogdon v. City of New

---

[2] Even taking as true Plaintiff's allegation that he only had 1.5 pills, he would still be violating § 3345. N.Y. Public Health Law § 3345 (McKinney's 2017).

12

Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002). Malice may be inferred when probable cause is totally lacking, Martin v. City of Albany, 42 N.Y.2d 13, 17 (1977), but that is not the case here.

Here, Plaintiff fails to proffer evidence sufficient to create a genuine issue of material fact as to whether Defendants acted with malice. Plaintiff claims he was charged with CPCS because he and his mother were in the process of filing a harassment complaint against P.O. Cruz. Memo in Opp. at 13. It was the DA's decision, however, to charge Plaintiff with CPCS after he was arrested for violating the OOP. Def. 56.1 ¶ 46. Nothing in the record suggests that P.O. Cruz learned that Ms. Ferebee was in the process of filing a complaint against him. Furthermore, it was Ms. Ferebee who was filing the complaint against P.O. Cruz, while Plaintiff merely accompanied her. Pl. Ex. A. at 22. No rational trier of fact could find that P.O. Cruz pursued Plaintiff for reasons other than seeing justice served. Lowth, 82 F.3d at 573.

Defendants' motion for summary judgment on the malicious prosecution claim is GRANTED. The Officers did not initiate the criminal proceeding; had probable cause to commence the proceeding; and there is no evidence of malice.

### C. Denial of Right to Fair Trial (Count III)

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). "Information may be false if material omissions render an otherwise true statement false." Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015); *see also* Manganiello, 612 F.3d at 159 (affirming verdict against police officer where officer misrepresented evidence to prosecutors or failed to provide prosecutor with material evidence or information).

13

Here, there was no denial of right to a fair trial. Plaintiff alleges that Defendants "fabricat[ed] evidence." ECF 21 at 7. If Plaintiff is referring to the discrepancy between the number of pills he claims to have had at the time of the arrest and the number of pills shown in the photograph, he, again, provides no tangible evidence to cast doubt on the photo's validity. Plaintiff cannot rely on conclusory allegations or unsubstantiated speculation to create fact issues. FDIC, 607 F.3d at 292. Plaintiff's allegation that P.O. Cruz omitted information he had about Plaintiff's prescription to the ADA also fails to substantiate Plaintiff's claim. If P.O. Cruz failed to disclose Plaintiff's prescription to the ADA, this would not "render an otherwise true statement false," Morse, 804 F.3d at 548, because whether Plaintiff had a prescription is irrelevant under § 3345. N.Y. Public Health Law § 3345 (McKinney's 2017). Furthermore, failure to disclose the prescription to the ADA would not be likely to "influence a jury's decision," Ricciuti, 124 F.3d at 130, because Plaintiff would have produced the prescription or prescription pill bottle at trial in support of his claim that he was entitled to carry the Tramadol,[3] which would negate the effect of any omission by P.O. Cruz. *See* Marlin v. City of New York, No. 15 Civ. 2235 (CM), 2016 U.S. Dist. LEXIS 122426, at *47 (S.D.N.Y. Sep. 7, 2016); Marom v. City of New York, 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *9 (S.D.N.Y. Mar. 7, 2016).

No false information was created; Defendant's motion for summary judgment is GRANTED.

**D. Excessive Force (Count VI)**

A police officer's use of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation." Maxwell v. City of New York,

---

[3] Though, as explained herein, even 1.5 pills is in excess of "current use" permitted by the statute.

14

380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). To determine reasonableness, the court balances the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest. Graham, 490 U.S. at 396. Police officers have authority to use some degree of physical coercion or threat thereof to effect an arrest. Id.

A successful excessive force claim requires sufficient evidence to establish that the alleged use of force was serious or harmful enough to be actionable. Morales v. City of New York, No. 13-cv-7667 (RJS), 2016 WL 4718189, at *4 (S.D.N.Y. Sep. 7, 2016). "[A] *de minimis* use of force will rarely suffice to state a constitutional claim," Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993), and "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used." Washpon v. Parr, 561 F. Supp. 2d 394, 407 (S.D.N.Y. 2008). Pushes or shoves that cause no injury cannot support an excessive force claim. *See e.g.,* Walzer v. Town of Orangetown, No. 13-cv-7971 (CS), 2015 U.S. Dist. LEXIS 45423, at *30 (S.D.N.Y. Apr. 7, 2015) (dismissing excessive force claim where plaintiff did not allege that he suffered any injuries as a result of officer's push).

Here, no reasonable trier of fact could determine that P.O. Cruz used excessive force when arresting Plaintiff. While he states that he suffered pain "for hours" as a result of P.O. Cruz's action, an actionable excessive force claim requires evidence of some physical injury. Knight v. Caldwell, 970 F.2d 1430, 1433 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993). Plaintiff himself testified that he suffered no physical injuries as a result of the arrest. Pl. Ex. A. at 76–77. Plaintiff went to the hospital twice (once from the precinct; and next from central booking), but the contemporaneous records for each visit do not support his allegation. Def. Exs. R. at 1–2. Instead, his chief complaint was "chest pain," which Plaintiff conceded is attributable

to his existing hernia. Pl. Ex. A. 58–60; Def. Exs. R. at 1–2. There is no report of any pain in his shoulders or parts of the body that would be affected by P.O. Cruz's lifting of his arms. Pl. Ex. A. 58–60; Def. Exs. R. at 1–2. Therefore, because the evidence shows no pain or injury related to the arrest, Plaintiff's excessive force claim fails as a matter of law. Walzer, 2015 U.S. Dist. LEXIS 45423, at *30.

Even if Plaintiff's claims of pain constituted sufficient injury, he would still be unable to show that P.O. Cruz applied more than a *de minimis* use of force. Merely lifting the arms of a handcuffed arrestee is not an unreasonable use of force.[4] *See, e.g.*, Perlesshi v. Cty. Of Westchester, No. 98 Civ. 6927 (CM), 2000 U.S. Dist. LEXIS 6054, at *18 (S.D.N.Y. Apr. 24, 2000) (cuffing an arrestee and raising his arms to purposefully cause momentary pain is not excessive force as a matter of law); Vogeler v. Colbath, No. 04 Civ. 6071 (LMS), 2005 U.S. Dist. LEXIS 44658, at *31–35 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendants where plaintiff was lifted off the ground by his arms while handcuffed).

Defendants' motion for summary judgment on the excessive force claim is GRANTED. Plaintiff suffered no physical injury as a result of P.O. Cruz's actions; and even if his "pain" could be considered an injury, P.O. Cruz's use of force was *de minimis*, precluding any rational trier of fact's determination that such force was unreasonable. Romano, 998 F.2d at 105.

### E. Failure to Intervene (Count IV)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (quoting Anderson v. Branen, 17 F.3d

---

[4] Plaintiff claims that P.O. Cruz pushed his arms, which were handcuffed behind his back, "way above [his] head." Pl. Ex. A. at 90. However, the fact that Plaintiff didn't suffer any physical injury renders this claim implausible, and the Court need not accept it as true for the purpose of summary judgment. Pl. Ex. A. at 76–77; *see* Matsushita, 475 U.S. at 575 ("[I]f the factual context renders [the non-movant]'s claims implausible… [the non-movant] must offer more persuasive evidence to support their claims than would otherwise be necessary.").

552, 557 (2d Cir. 1994). Liability attaches only when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). "Officers that may be held liable under a theory of direct participation may not be held liable for failure to intervene." Hicks, 2017 WL 532304, at *11 (internal quotation marks omitted). "If the Court determines that the officer's conduct did not violate a constitutional right…the analysis ends." Feinberg v. City of New York, 2004 WL 1824373, No. 99-CV-12127 (RC), at *4 (S.D.N.Y. Aug. 13 2004).

P.O. Cruz cannot be held liable for failure to intervene because he "direct[ly] participated" in all of the alleged constitutional violations. Hicks, 2017 WL 532304, at *11. There can be no liability for failure to intervene because no constitutional violation occurred. Feinberg, 2004 WL 1824373, at *4. Accordingly, Defendants' motion for summary judgment on the failure to intervene claim is GRANTED.

**F. Illegal Search (Count V)**

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). Such a search can "involve a relatively extensive exploration of the person." Id. at 227 (permitting a search of arrestee's pockets incident to arrest). Here, the arrest conducted by the Officers was lawful, as it was based on probable cause; and the search of Plaintiff's pockets incident to his arrest was permissible under the Fourth Amendment. Ackerson, 702 F.3d at 19; See Robinson, 414 U.S. at 228.

Accordingly, Defendants' motion for summary judgment with regard to Plaintiff's illegal search claim is GRANTED

### G. Excessive Pre-Arraignment Detention (Count VII)

The Court notes that Plaintiff did not respond to Defendant's motion for summary judgment with regard to **Count VII**. Thus, it is deemed abandoned for the purpose of this motion. Kovaco v. Rockbestos-Suprenant Cable Corp., 834 F.3d 128, 143 (2d Cir. 2016). Regardless, Plaintiff's claims of excessive detention are meritless.

"[W]hen there has been a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention." Bryant v. City of New York, 404 F.3d 128, 135–36 (2d Cir. 2005). A detention less than 24 hours, is presumptively reasonable, and a claim of excessive detention may only survive if the plaintiff shows that his probable cause determination was "delayed unreasonably." Case v. City of New York, No. 14 Civ. 9148 (AT) (RLE), 2017 WL 571530, at *7 (S.D.N.Y. Feb. 10, 2017); Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).

Plaintiff was detained for less than 24 hours, making his detention presumptively reasonable. McLaughlin, 500 U.S. at 56. Furthermore, other than Plaintiff's say so, nothing supports his claim that his arraignment was "delayed unreasonably." Id. Plaintiff was arrested on September 8, 2014 at about 12:55 P.M., and was taken to Jacobi Hospital at about 1:00 P.M. Def. 56.1 ¶¶ 21, 37. Plaintiff was at Jacobi Hospital from 2:39 P.M. until discharge at 5:49 P.M. Id. ¶ 38. Plaintiff returned to the precinct at about 6:30 P.M. Id. ¶ 39. Plaintiff was out of the precinct for 6.5 hours. Id. ¶¶ 37–39. When Plaintiff was transferred to BCB, he again complained of pain. Pl. Ex. A. at 66–67. He returned to Jacobi Hospital at 12:15 A.M., where he was seen from 1:14 A.M. to 5:15 A.M. Def. 56.1 ¶¶ 40–42. This amounts to 5 hours away from BCB. Id. Plaintiff

was arraigned at 12:33 on September 9, 2014. Id. ¶¶ 44, 48. Out of Plaintiff's near-24 hour detention period, 11.5 hours were spent visiting Jacobi Hospital. Id. ¶¶ 37–42.

Delay for the purpose of providing an arrestee with medical attention is a far cry from the category of unreasonable delay the Supreme Court has determined sufficient for an excessive pre-arraignment detention claim. See McLaughlin, 500 U.S. at 56. As Plaintiff relies on conclusory allegations to support his claim, and fails to make a showing sufficient to establish the existence of an element essential to his case, for which he will bear the burden of proof at trial, summary judgment should be granted. FDIC, 607 F.3d at 292.

Accordingly, Defendants' motion for summary judgment on the excessive pre-arraignment detention claim is GRANTED.

### H. Monell Claims

A municipality is not vicariously liable for its employees' actions under § 1983; thus the City of New York is not liable under *respondeat superior*. Connick v. Thompson, 563 U.S. 51, 60 (2011). Plaintiffs seeking to hold a municipality liable under § 1983 must show "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). There is no proof of the existence of (1) a formal policy, (2) action taken or decisions made by policymakers that caused the violation of plaintiff's rights, (3) a practice so persistent and widespread that it constitutes a "custom or usage," or (4) a failure to properly train or supervise municipal employees. Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted). There must be an underlying constitutional violation to support a Monell claim. Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). Even if Plaintiff had suffered a violation, which he did not,

evidence of one incident, even one involving multiple violations, is insufficient to lead a rational trier of fact to conclude that the practice is "so persistent and widespread" to constitute "custom or usage." Moray, 924 F. Supp. at 12. Accordingly, Defendants' motion for summary judgment on the Monell claims is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety. The Clerk of Court is ordered to enter judgment and close this case.

Dated: New York, New York

July 6, 2017

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge